# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:12-cv-00427-WYD-GPG

DONALD JOHNSON and DONALD (DJ) JOHNSON,

      Plaintiffs,

v.

RIVERWALK HOLDINGS, LTD and
SILVERMAN & BORNSTEIN, PLLC

      Defendants.

_____

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 34).**
_____

      Defendant has filed a motion for summary judgment that states Defendants' legal conclusions that ignore the facts, law and the text of this Court's previous order as well as Plaintiffs' own motion for summary judgment and their responses to Defendants' motions to dismiss. Defendants' motion makes Plaintiff wander if Defendants have read anything filed in this case so far. Plaintiff will thus brief this case one more time however they will attempt to be as concise as possible this case it has been briefed so many times before. Plaintiffs statement of facts and references are *verbatim* from Plaintiffs' motion for partial summary judgment and all exhibits are filed with that motion.

**FACTS ESTABLISHED AS A MATTER OF LAW OR REMAINING IN DISPUTE**

      1.      On January 13, 2011, Defendant Silverman on behalf of Defendant Riverwalk properly filed an action in Garfield County Court against Plaintiff Donald

Johnson (father) for $1,182.12 plus "proper" interest, costs and attorneys fees. (Exhibit 1).

2. Defendant Silverman attached to the complaint an affidavit of Riverwalk claiming it was owed "$1,182.12 plus interest accruing at the rate of 18% per annum since April 17, 2008." (Exhibit 2) as well as statements that demonstrate that the underlying account carried a variable interest rate tied to some rate index. (Exhibit 3).

3. On February 18, 2011, Defendant Silverman as attorney for Defendant Riverwalk, filed a motion for a default judgment and a proposed order asking for "principal $1181.82, interest of $603.21, Attorneys fees $.00, Costs of $162.25 for a total sum of $1,947.28." The motion further stated that it included "interest on that principal sum at the rate of 28.99% per annum and 28.99% on this sum through the date of this motion." (Exhibits 4 and 5).

4. On March 3, 2011 the state court granted judgment in accord with the Defendants' request. (Exhibit 6).

5. The Court can take judicial notice that interest rate indexes dropped after the last statement submitted. (Exhibit 12).

6. On April 6, 2011, Defendants requested a garnishment on U.S. Bank for "$1,947.28. Post-judgment interest to continue to accrue at 28.99% per annum." and the state court granted it as requested. (Exhibits 7 and 8).

7. On April 26, 2011, Plaintiff Donald Johnson (father) *pro se* filed a claim of exemption claiming the money in the account was the son's and was student loan money. (Exhibit 9). Thereafter he also retained counsel who filed a motion in the state

2

court for relief from the judgment claiming, in part, that the interest rates claimed in the default motion were wrong and inflated. (Exhibits 10, 11 and 12).

8.  Thereafter Defendants doggedly resisted any relief on Plaintiff's state court motion on procedural grounds, even filing a surreply, again on procedural arguments, primarily that the motion was purportedly untimely and that Plaintiffs had no good cause or excusable neglect for the default even though there was constructive service.  Defendants never produced a written contract or even suggested to the state court that the rates in the judgment were proper, only that Plaintiffs were procedurally barred from pursuing the motion. (Exhibits 13 and 15).

9.  On June 21, 2011, the state court revised the judgment to reflect a balance of " Principal $1,181.82, Interest accrued at 8% from April 17, 2008 through March 3, 2011 in the amount of $271.98, Attorney Fees $.00, and Costs $162.25, for a total judgment of $1,616.05.  Post-judgment interest to continue to accrue at 8%." (Exhibit 16).

10.  Defendant is currently in default for failing to timely respond to the Amended Complaint which alleged all of the foregoing. (Docs. 22 and 23).

### Response to Defendants' Statement of Facts

1.  Plaintiffs admit the factual statements in Paragraph 1.

2.  Plaintiffs admit the factual statements in Paragraph 2.

3.  Plaintiffs admit the factual statements in Paragraph 3 except that the statements provided a variable rate, which on the date of the statements was 28.99%. (Exhibits 2,3).

4.  Plaintiffs admit the factual statements in Paragraph 4.

    5.    Plaintiffs admit the factual statements in Paragraph 5.

    6.    Plaintiffs admit the factual statements in Paragraph 6

    7.    Plaintiffs admit the factual statements in Paragraph 7.

    8.    Plaintiffs admit the factual statements in Paragraph 7 in part. The Court denied the motion to set it aside entirely but revised the interest. (Exhibit 1).

    9.    Plaintiffs admit the factual statements in Paragraph 9 in that the Court amended the judgment, Plaintiff deny that it was *sua sponte*, the documents speak for themselves,

    10.    Plaintiffs admit the factual statements in Paragraph 10.

    11.    Plaintiffs admit the factual statements in Paragraph 11.

    12.    Plaintiffs admit the factual statements in Paragraph 12.

    13.    Plaintiffs admit the factual statements in Paragraph 13.

    14.    Plaintiffs deny the factual statements in Paragraph 14. The Court did not hold that Mr. Johnson's claims were time barred. The Court held, "That Mr. Johnson must rely on extraneous materials to cobble together a claim that survives a Rule 12(b)(6) motion to dismiss demonstrates that an amended pleading is necessary. If there was no FDCPA violation until the Defendants sought a default judgment then the Complaint needs to make that clear with the requisite factual allegations. At present, the Complaint makes no such claim." (Doc. 21, at 4).\

    15.    Plaintiffs admit the factual statements in Paragraph 15.

    16.    Plaintiffs admit the factual statements in Paragraph 16 except that the claims were clarified to comply with the Court's order. (Amended Complaint).

    17.    Plaintiffs admit the factual statements in Paragraph 17.

18.     Plaintiffs admit the factual statements in Paragraph 18.

19.     Plaintiffs admit the factual statements in Paragraph 19.

## II.     STANDARD OF REVIEW

Defendant correctly states the standard of review but erroneously claims it has not been met.

## III.    LEGAL ARGUMENT

### A.     Defendant Continues to Insist on Falsely Parroting that Mr. Johnson's Claims were Filed in Violation of the Court's Order.

Plaintiffs have fully addressed this frivolous argument in their Response to Defendant's Motion to Dismiss (Doc. 24) at 3 stating:

> "At best, based on a superficial reading of the Court's order and at worst, a blatant attempt to prejudice the Court, Defendant falsely accuse counsel of unethical behavior. Defendants claim:
>> *'The Court held* that Mr. Johnson's claims were barred by the FDCPA's one year statute of limitations. ..., *In complete disregard of the Court's Order* Plaintiffs filed the Amended Complaint asserting the identical claims that were dismissed on behalf of Mr. Johnson. Additionally, *no new facts* are alleged in support of Mr. Johnson's claims.' (emphasis added)(Mot. at 6).
>
> This Court's order, however, stated at 4:
>> 'In his response brief, Mr. Johnson suggests that Defendants misapprehend his claim for relief. He posits that he had no claim for a FDCPA violation at the time Defendants served him with the state law complaint. ... If there was no FDCPA violation until the Defendants sought a default judgment then the Complaint needs to make that clear with the requisite factual allegations. At present, the Complaint makes no such claim.'
>
> Rather than accepting Defendants' invitation to rewrite the FDCPA statute of limitations by an odd relation back theory, Plaintiff instead reads the Court's order as stating that if there was no violation at the time of filing the underlying lawsuit, Plaintiffs should make that clear in their amended complaint."

Despite the foregoing, Defendants continue to parrot their false allegations of impropriety as if repetition and ignoring the facts will make them true.

### B.     No Claims are barred by the Statute of Limitations

Similarly, Defendants attempt to ignore the issue regarding the statute of limitations on the merits. Defendant has repeatedly urged that since its legal collection case was filed more than one year prior to Plaintiff's lawsuit that its violations that occurred thereafter are somehow time barred. Plaintiff painstakingly called to the Court in both of his responses to both of Defendants Motions to Dismiss and also in Plaintiff's summary judgment motion that there was no violation in the original documents filed with the state Court.  Defendant, misquoting the record state, " Mr. Johnson alleges that since Defendants requested interest in excess of 8% without proper written support Defendants' conduct violated the FDCPA."  (Defendant's Motion at 9). Plaintiff has *never* made such a claim. Plaintiffs have consistently argued that the  FDCPA violation was for *post-judgment* interest. It violated C.R.S. § 5-12-102 (4) which does not even apply to pre-judgment interest. Since its decision, Plaintiffs have cited *Shepherd v. Liberty Acquisitions, LLC*, Case No. 11-cv-00718-CMA-MEH (D. Colo., July 9, 2012) holding the practice to violate the FDCPA.

It simply was not an FDCPA violation to ask for 18% prejudgment; in fact, it was likely owed.  Despite that it has the burden of proof on the statute of limitations, Defendants do not suggest how 18% prejudgment was improper. The best they could suggest is that the state court exercised its discretion to reduce some prejudgment interest but, as Defendants have stated several previous times, the fact that a state court grants relief does not in itself support an FDCPA case for attempting to collect. The blunt reality is that Defendants do not have a violation outside of the statute of limitations and even if they did, it would certainly have been  separate and distinct from

asking for 28.99% post-judgment in violation of C.R.S. § 5-12-102 (4). *see, Compos v. Brooksbank*, 120 F.Supp.2d 1271, (D. NM. 2000).

Again they rely on *Wyles v. Excalibur I, LLC*, 2006 WL 2583200 (D. Minn. 2006) and *Rosado v. Taylor*, 324 F.Supp.2d 917, 921-22 (N.D.Ind.2004). The *Wiles* court stated at 10: "Wyles alleges that Excalibur improperly demanded interest and attorneys fees *when it brought the case* in state court... ." (emphasis added). *Wyles* further stated at 2: "She alleges that Excalibur was not entitled to collect interest and attorneys fees with her debt." This is quite simple, Excalibur violated when it asked for interest and fees in its state court complaint because it was not entitled to interest or fees *at all*. That was a violation. Defendant further relies on *Rosado v. Taylor*, 324 F.Supp.2d 917, 921-22 (N.D.Ind.2004). Defendants' own motion states at 8-9 that *Rosado* stands for the proposition that "Once a creditor has advanced a position in litigation, the opportunity to cure the violation has passed. And commencement of litigation is a clear and certain commitment by the creditor. " Neither case comes close to standing for the aberrant proposition that a cause of action accrues when, like here, it would violate Rule 11 to bring it. Plaintiffs in previous briefs have repeatedly asked Defendants, who have the burden of proof, what violation occurred with the filing of the state complaint. All they can do is misstate Plaintiffs' allegations that Defendants violated by "Falsely representing to the County Court that the amount of the indebtedness was '$2,108.32 representing the original judgment of $1,947.28 plus post judgment interest at the rate of 28.99% per annum for $51.04 plus taxable costs of $110.00.' when it was substantially less" and "[R]equested post judgment interest at a rate in excess of 8% without the writing required by C.R.S. § 5-12-102 (4)." Amended Complaint ¶¶ 7 and

13a. All of Defendants' gyrations do not change the public record of the original complaint asking for "proper interest." (Exhibit 1).

**C. Defendants did make False or Misleading Statements in the State Court Case**

Defendant claims it made no false or misleading statements. Defendants asked for a default judgment and submitted a proposed order stating, "Post-judgment interest to continue to accrue at 28.99% per annum." Defendant argues:

> "Under Colorado law creditors are entitled to statutory interest at the rate of 8%. See C.R.S. § 5-12-101. A greater rate may be stipulated to by the parties in an instrument in writing. See, C.R.S. § 5-12-103(1); *Martinez v. Continental Enterprises*, 730 P.2d 308 (Colo. 1986) (parties to contract are free to set rate of interest by mutual agreement). In the State Court Case Defendants requested prejudgment interest at the rate of 18% and post judgment interest at the rate of 28.99%. Defendants used these interest rates relying on an affidavit and the billing statements attached to the State Court Case complaint. See, Docket 25, Exhibits 2-3. Since the rate of interest was supported by an instrument in writing Defendants did not make a false or misleading statement in violation of § 1692e or § 1692f."

This position is nothing less than incredible. Plaintiffs fully answered this argument in their Reply (Doc. 35) to Defendants' response to their motion for summary judgment. Plaintiff fully explained in that 1. The statements listed variable rates in effect before rates went down, 2. that an instrument is defined as "A written document; a formal or legal document in writing, such as a contract, deed, will bond or lease". Blacks Law Dictionary (4th ed. 1968) and 3. Produced a public record copy of a U.S. Bank (Defendant Riverwalk's Predecessor) cardmember agreement that shows what a contract or instrument would look like and contained the complex language necessary to actually calculate the right interest. Defendant just plain inflated the rate and now seeks to litigate its way out of personal responsibility for a really corrupt practice. This point is baseless.

Defendants attempt to justify lying to the state court relying upon *Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814, 820 (8th Cir. 2012). Defendants underscore the FDCPA's "apparent objective of preserving creditors' judicial remedies" an excuse. What Defendants try to obscure here is that Plaintiffs amended complaint accepts the *Hemmingsen* analysis here as a compromise. Originally, Plaintiffs sued the Defendants for both inflating the interest against both Mr. Johnson and D.J. and for garnishing money that did not belong to the debtor but only to D.J. This Court recognized the difference between these two claims in its ruling on the motion to dismiss the original complaint. As the FDCPA is a strict liability statute, Plaintiffs, as other FDCPA Plaintiffs, reasoned that *any* false statement was actionable subject to the Defendant proving a *bone fide* error. Because Mr. Johnson's name was on the account, this Court, recognizing the FDCPA's 'apparent objective of preserving creditors' judicial remedies,' dismissed the garnishment claim. Regardless of the reasoning, Plaintiffs chose to accept the Court's decision. The interest claim is quite the opposite under *Hemmingsen.*

These Defendants have the privilege of collecting millions of dollars in high interest debt in Colorado from mostly distressed debtors trying to survive in a rough economy. Probably most of the cases involve debt buyers who legitimately purchase these debts for pennies on the dollar and are legally granted the privilege, at least as of now, to collect the whole debt including interest from distressed consumers. The record here shows inescapably that, after Plaintiff Donald Johnson defaulted the Defendants padded the interest rate. The record here even shows that Riverwalk, that likely had experience in other states with variable interest, put 18% in its affidavit to be safe. There is only one logical explanation why would Silverman countermand its own client's

affidavit and ask for 28.99% post-judgment interest. They, just like Liberty Acquisitions in *Shepherd v. Liberty Acquisitions, LLC*, Case No. 11-cv-00718-CMA-MEH (D. Colo., July 9, 2012), thought they could get away with it in Colorado due to the lack of attorneys policing their practices. With the amount of debt Silverman collects its feigned ignorance of the requirements respecting C.R.S. 5-12-102(4) is almost as appalling as their ridiculous argument that credit card statements somehow satisfy the requirement of a contract or instrument in writing specifying the rate.  The FDCPA does not have "apparent objective of preserving" scams creditors run on the public as clearly happened here.  Plaintiffs give Defendants the benefit of the doubt on a fairly disputed issue as to the U.S. Bank account belonging to D.J. There is neither a colorable basis nor an excuse for inflating interest clearly not recoverable.

**D.  DJ does have standing to assert his claims**

Again, in  Plaintiffs' Reply (Doc. 35) to Defendants' response to their motion for summary judgment, Plaintiffs also dispense with Defendant's twisted standing argument. *Thomas v. Consumer Adjustment Co., Inc.*, 579 F.Supp.2d 1290 (E.D. Mo., 2008)(granting the non-debtor plaintiff summary judgment) exposes how Defendants' arguments are misapplied from portions of the FDCPA that directly prohibit actions against "the consumer" such as 15 U.S.C. § 1692(c) ("[T]he debt collector may not communicate with *a consumer*..."). The applicable sections here are not so qualified.

Defendant cites O'rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938 (7th Cir., 2011) and *Todd v. Collecto, Inc.,* 2012 WL 5510226 (N.D. Ill. 2012), as standing an implied "special relationship" requirement. While Defendant's correctly cite *O'rourke* the concurring justice disagreed. The *Todd* Court, sitting in the Northern District of Illinois

was obviously bound by the majority in the Seventh Circuit O'rourke decision. The Eighth Circuit in *Hemmingsen v. Messerli & Kramer, P.A.*, *supra,* upon which Defendants heavily rely for other issues, flatly rejected this broad reasoning. This case is a poster child for *Hemmingsen.* It protects collectors on the debatable issue of D.J.'s ownership of the bank account. On the other hand, Defendants today argue that it is not a violation of the FDCPA to practice collection law in a state that requires that the collector have the written agreement to collect high interest, then mislead the Court into thinking the rate is higher than any such agreement could have provided in light of the account statements. Debtors, Judges and lawyers alike are often unfamiliar with the complexities of credit card interest. The U.S. Bank agreement attached to Plaintiffs' Reply in support of their motion for summary judgment illustrates this well. Here, Defendants conduct could almost deceive the most sophisticated debtor. Further, it was deceptive as a matter of law. It is impossible that a credit card bearing 28.99% variable interest at the time of the statements in late 2008 could have carried such interest in March of 2011 when Defendants asked for the default judgment. Congress could not have intended to protect such conduct with the language it chose in the FDCPA.

### E.  Defendants Literally Collected the Debt from DJ

Defendants, without any authority, state that DJ "makes no effort to show that Defendants attempted to collect a debt from him and if so, that Defendants made false or misleading statements in collecting the debt or tried to "collect too much from him." Defendants seized money from D.J. that was excessive interest that it was not allowed to collect from anyone, even the debtor. It is a stretch to say that seizing money is not collecting.  This argument is also baseless.

## CONCLUSION

This case is more than a simple FDCPA case. It is a case wherein a reasonable jury could conclude (and Plaintiffs believe the evidence shows as a matter of law) that the Defendants, at least recklessly, ignored a clear Colorado statute and collected post-judgment interest from two Plaintiffs that was never owed. Further, a reasonable jury *could find* (although it need not under the FDCPA), that Silverman deliberately inflated the interest from its own client's affidavit in violation of a clear interest statute thinking it would not get caught doing so in Colorado. This is what the FDCPA was designed for. These reckless or even intentional actions, which were little less than lying to the state court, were far beyond the "creditors' judicial remedies" that the FDCPA protects. Defendants imagine that by putting up a fierce fight they will somehow avoid the consequences they clearly deserve from this record. Not only should Summary judgment for the Defendants be denied, it should be granted for Plaintiffs.

/s/ Blair Drazic
Blair K. Drazic
2139 12th St., Suite 8
Grand Junction, CO 81501
Phone 970-623-1193
Fax: :  888-858-0992
E-mail: blairdrazic@gmail.com

## CERTIFICATE OF SERVICE

A copy of the foregoing will be served via the ECF system.

/s/ Blair Drazic